**SPAIN v. POWELL et al.**

**No. 4143.**

Circuit Court of Appeals, Fourth Circuit.

June 14, 1937.

George E. Allen, of Richmond, Va. (C. Alwyn Perkinson and E. Harold Thompson, both of Richmond, Va., on the brief), for appellant.

Eppa Hunton, IV, and Edmund M. Preston, both of Richmond, Va. (Hunton, Williams, Anderson, Gay, and Moore, of Richmond, Va., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The plaintiff in the District Court, a car repairer, suffered a serious and painful injury to his right hand in the course of his employment by the receivers of the railway company, and brought this suit for damages on the ground that his employers had negligently failed to furnish him with proper appliances for the work. The jurisdiction of the court was based on the Federal Employers' Liability Act, 45 U.S.C.A. § 51–59, as the evidence showed that at the time of the injury on March 2, 1935, at Richmond, Va., the plaintiff was engaged in making minor repairs to a Fruit Grower's Express refrigerator car which shortly before that day had been withdrawn from interstate transportation for that purpose and shortly afterward was returned to like service. The District Judge directed a verdict for the defendants on the ground that no negligence on their part had been shown, and this appeal followed.

One of the wheels of the car had developed a flat surface, and it became necessary to remove the pair of wheels, of which it was a member, from the truck beneath the body of the car. A truck consists of two pairs of wheels and a bolster or heavy metal sill which extends transversely of the truck and supports the body of the car. The ends of the bolster rest upon the frame of the truck and upon springs located between the two pairs of wheels. In order to remove the wheels, it is necessary to take out the springs by hand and, to accomplish this operation, the bolster must be raised so as to relieve the springs of its weight. For this purpose a chain is placed around the bolster at each end, a lever six feet long is inserted between the chain and the bolster, and the side of the truck is used as a fulcrum. A helper sits on the free end of the lever, thereby lifting the bolster from the springs and enabling the car repairer to remove them. After the wheels have been removed and replaced, the bolster is again lifted to permit the replacement of the springs. While the plaintiff in the pending case was engaged at this point of the operation in replacing the springs on one end of the truck, the chain gave way and the bolster fell upon his right hand and caused the injury.

The gist of the action is that the plaintiff was not furnished with a suitable chain for the work. The type of chain customarily used consists of links of ordinary construction and a large hook at one end. After the chain is placed around the bolster,

it is made fast, not by placing the hook through a link, because the hook is too large for this, but by placing a link inside the hook so that the shoulders of the following link will press against the sides of the hook and form a secure union. It is obvious that, if the hook is so widespread as to permit the shoulders of the following link to slip through, the equipment is not safe for the purpose. One of the witnesses for the plaintiff, an assistant foreman on the railroad, testified that after the accident he found such a chain under the truck upon which the plaintiff had been working. He said that not only was the hook spread too much, but that a flatter hook was regarded as safer and was customarily used on chains for bolster work. The plaintiff on his own behalf, however, testified that he did not use the defective hook found at the place of the accident by the assistant foreman, nor a flat hook such as the latter described. He said that in fact no such chains as the foreman described as safe were furnished by the railway company prior to the accident, although such chains were used after the event. On account of this testimony it is claimed that there was a substantial showing of neglect on the part of the defendants, and that it was error to direct a verdict in their favor.

█ There are, however, other considerations which prevent this conclusion. The plaintiff's evidence in the first place leaves the cause of the accident quite uncertain, and, in the second place, the plaintiff, who was a mechanic of long experience i᷈ this kind of work, employed a simple and well-known device whose defects, if any, must have been manifest to him. He had been working as a car repairer for more than twenty years and had performed the same operation many times. It was the duty of the helpers to bring the tools needed for the repairs and the plaintiff found that two chains had been brought by his helper to the site of the work on this occasion. There was another car repairer on the other side of the car and there were three helpers altogether. The plaintiff picked up a chain on his side of the car and put it around the bolster. He did not closely examine it, but he had used this particular chain many times before. He knew that the hook was somewhat spread but used it, thinking it would hold. After the chain was hooked, a helper told him that it was too tight, whereupon he slackened it. He stated that he examined it sufficiently to hook it safely and then told a

helper to sit down upon the end of the lever. The latter did so and, after an interval, the chain became loose and the bolster fell. The plaintiff said that the "hook or link on the lift chain or something gave way"; and he did not know "whether it broke or the hook spread or what happened." No one else could explain why the chain, which had been safely used so many times before, became loose on this occasion and no witness was produced who saw the chain after the accident. Under these circumstances, the cause of the accident remains a matter of conjecture. The evidence does not show that the plaintiff unintentionally fixed the chain in an improper manner or that the helper unconsciously lifted his weight from the lever during the operation or that the chain developed an unforeseen defect, and we can only speculate as to the true explanation. We have then an uncertainty as to the inferences which may fairly be drawn from the evidence, and the judgment as a matter of law must go against the party upon whom rests the necessity of showing that he is entitled to recover. See Pennsylvania R. R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819; Patton v. Texas & Pacific R. Co., 179 U.S. 658, 21 S.Ct. 275, 45 L.Ed. 361; Sutphin v. N. & W. Rwy. Co., 151 Va. 278, 286, 144 S.E. 436.

█ Even if we assume, in the absence of a showing to the contrary, that it was the mechanical device and not the human agencies which failed, the plaintiff is no better off. He was qualified by long experience to understand the true nature of his work and he was dealing with a very simple tool or device. The rule in the case of simple tools was stated by this court in Newbern v. Great Atlantic & Pacific Tea Co., 68 F.(2d) 523, 525, 91 A.L.R. 781, as follows:

"It is well settled that, while it is the duty of the master, in exercise of reasonable care for the safety of the employee, to see that machinery and appliances which may cause injury to him are in reasonably safe condition, this duty does not ordinarily exist with respect to simple tools from the use of which no danger is reasonably to be apprehended or as to which the employee is in a better position than the master to discover defects. 39 C.J. 342, 419; 18 R.C.L. 563; Kilday v. Jahncke Dry Dock & Ship Repair Co. (C.C.A.5) 281 F. 133; O'Hara v. Brown Hoisting Mach. Co. (C.C.A.3) 171 F. 394; Middleton v. National Box Co. (D.C.) 38 F.(2d) 89; Taylor v. A. C. L. R. Co., 203 N.C. 218, 165 S.E. 357; Cole v.

S. A. L. Ry. Co., 199 N.C. 389, 154 S.E. 682; Martin v. Highland Park Mfg. Co., 128 N.C. 264, 38 S.E. 876, 83 Am.St.Rep. 671; and see notes in 1 L.R.A.(N.S.) 949; 13 L.R.A.(N.S.) 668; 30 L.R.A.(N.S.) 800; 40 L.R.A.(N.S.) 832; 51 L.R.A.(N.S.) 337; L.R.A.1918D, 1141. This is true, not because the employee assumes the risk of injury from defects in such tools, but because the possibility of injury is so remote as not to impose upon the master the duty of seeing that they are free from defects in the first instance or of inspecting them thereafter. The fact that the employee has better opportunity than the master to judge of the defects of such tools, that no inspection is necessary to discover such defects, and that no danger is to be apprehended which the employee cannot guard himself against, renders it unnecessary in ordinary cases that the master exercise with respect to simple tools the care that the law requires with respect to more complicated machinery. With respect to simple tools, ordinarily the master is not relieved of responsibility because the servant assumes the risk, but the servant assumes the risk because the master is relieved of responsibility, or, what is probably a more accurate statement, the same circumstances which establish assumption of risk on the part of the servant show that there is no duty on the part of the master. Assumption of risk by the servant does not necessarily imply negligence on the part of the master."

■ The unfortunate accident suffered by the plaintiff in the course of his dangerous occupation was of the sort for which compensation, irrespective of the employer's liability, is often provided by statute. But the pending suit is brought under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51 to 59, which regulates the liability of carriers by railroad engaged in interstate commerce for damages for injuries suffered by their employees while engaged in such service; and, while the act eliminates the defense of assumption of the risk when the carrier has failed to observe statutory regulations for the safety of employees, it still retains the defense as a complete bar in all other situations. Seaboard Air Line Ry. Co. v. Horton, 233 U.S. 492, 502, 503, 34 S.Ct. 635, 58 L.Ed. 1062, L.R.A.1915C, 1, Ann. Cas.1915B, 475; Pryor v. Williams, 254 U. S. 43, 41 S.Ct. 36, 65 L.Ed. 120.

The judgment of the District Court must be affirmed.