## JACOB v. NEW YORK CITY.

No. 589.   Argued March 6, 1942.—Decided March 30, 1942.

*Mr. Dominick Blasi*, with whom *Mr. Silas B. Axtell* was on the brief, for petitioner.

*Mr. Alfred T. White*, with whom *Messrs. William C. Chanler* and *Paxton Blair* were on the brief, for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen,

whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts. The present case is a suit by petitioner under the Jones Act[1] for personal injuries sustained when he fell because the wrench he was using to tighten a nut slipped under the torque applied to it. We are called upon to determine whether on the evidence adduced by petitioner, and in contravention of accepted juridical standards, petitioner was wrongfully deprived of his statutory right to jury trial by the action of the trial court in dismissing his complaint,[2] thereby refusing to submit the case to a jury which had been duly empanelled to try it. In holding that petitioner had failed to prove facts sufficient to warrant submitting the issue of respondent's negligence to the jury, the trial court relied on the so-called simple tool doctrine. The Circuit Court of Appeals affirmed. 119 F. 2d 800. The novel questions thus presented in the administration of the Jones Act prompted us to grant certiorari. 314 U. S. 595.

Petitioner's testimony[3] is the complete answer to the question whether the case should have been taken from

---

[1] 41 Stat. 988, 1007, 46 U. S. C. § 688.

[2] The complaint set forth two causes of action—the first for personal injuries, and the second for maintenance and cure. Respondent moved to dismiss only the first cause of action. At the same time, in settlement of the second cause of action, respondent offered to consent to judgment for loss of wages from the time of the accident until petitioner returned to work. This offer was refused by petitioner's counsel and the second cause was thereupon dismissed. The Circuit Court of Appeals, *sua sponte*, directed that judgment be entered on the second cause of action for petitioner, in the amount admitted to be due from respondent. That judgment is not in issue here. Only the first cause of action, that for personal injuries, survives for our consideration.

[3] Petitioner was the sole witness in his own behalf. The trial court did not allow an opinion witness, called for the purpose of establishing the best type of wrench for the work petitioner was doing at the time of the accident, to testify.

the jury. The gist of that testimony is as follows: For three weeks prior to the accident, petitioner, an employee with twenty years' experience, had been serving as water-tender in charge of the fire-room on the "Dongan Hills," a ferryboat operated by respondent between Staten and Manhattan Islands in New York harbor. One of his duties was to change oil strainers. This was done about three times a week, and required the removal and replacement of a manifold head, housing the strainers, which was held in place by six studs and nuts. When the manifold was replaced, the nuts had to be very tight. The best tool to remove and to tighten the nuts was a straight end wrench fitting a 1¼″ nut. Petitioner used an S-shaped end wrench of the proper size which was "well worn," "had seen a lot of service," was "a loose fit," and "had a lot of play on it." There was about one-sixteenth of an inch "play in the jaws; it was worn." The wrench was about eighteen inches long and the "play" at the end was "about an inch." Petitioner asked the chief engineer for a new wrench three times, the first request being when petitioner first had occasion to use the worn wrench to change an oil strainer, and the last, two or three days before the accident. In answer to this last request, the chief engineer "said for me [petitioner] to look in the tool closet and see if there was one in there; and I went up there and couldn't find any and I believe he said he sent an order out for one." The regular way of requisitioning needed tools was by a report to the chief engineer. All petitioner was supposed to do was order; he did not know what respondent kept in its storeroom. The "Dongan Hills" docked at Manhattan Island on the average of six or seven times each day. On the day of the accident, petitioner did not renew his request, but he did look in the chief engineer's tool set. He found no end wrench of the proper size, did not know if a Stillson wrench was there, but believed

that a monkey wrench was. A monkey wrench could "probably" be used on any nut. At the time of the accident, petitioner was using the worn, S-shaped, end wrench to tighten the nuts after changing the oil strainer. There was about five-eighths of an inch of thread on the studs, and petitioner had changed the wrench on one nut four times. As he started the fifth tightening, the wrench slipped, causing him to fall from the eighteen inch square platform on which he was standing to the catwalk eighteen inches below. In the course of the fall, petitioner sustained an injury to his right side, which struck an angle iron alongside the catwalk.

The Jones Act, in addition to giving injured seamen the right to trial by jury in actions arising under the Act, also incorporates "all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees." Among such statutes is 45 U. S. C. § 51, which provides in part that a carrier is liable for "injury or death . . . by reason of any defect or insufficiency, due to its [the carrier's] negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

Although proof of negligence is an essential to recovery under the Jones Act, *Kunschman* v. *United States,* 54 F. 2d 987; cf. *Beadle* v. *Spencer,* 298 U. S. 124, 128, contributory negligence and assumption of risk are not available defenses. The admiralty doctrine of comparative negligence applies. *Socony-Vacuum Co.* v. *Smith,* 305 U. S. 424. The salient points of petitioner's testimony, summarized above, made a sufficient showing to allow the jury to consider the issue of respondent's negligence. The wrench petitioner was using had become defective for the purpose for which it was designed. After discovering that defect, petitioner made three requests to the proper person, the chief engineer, for a new wrench. The

first of those requests was about three weeks prior to the accident, the last but two or three days before it occurred. At that time, the chief engineer said he sent out an order for one, but it was not forthcoming in the two or three days intervening before the accident, despite the fact that the "Dongan Hills" docked at Manhattan Island six or seven times a day. While the best tool for doing the work was a straight end wrench of the proper size, petitioner had access to a monkey wrench which "probably" could be used on any nut. We think these facts entitled petitioner to have the jury consider whether his injury was caused by any "defect or insufficiency, due to its [respondent's] negligence, in its appliances." That is to say, it was for the jury to decide whether a monkey wrench was a reasonably safe and suitable tool for petitioner's work, whether respondent's failure, although it had at least two days' and possibly three weeks' notice of the defect, to supply petitioner with a new wrench amounted to negligence on its part, and whether respondent, after it had knowledge of the defect, might not have reasonably foreseen the possibility of resulting harm if it allowed the worn wrench to remain in use. Cf. *Socony-Vacuum Co.* v. *Smith, supra.* Without doubt the case is close and a jury might find either way. But that is no reason for a court to usurp the function of the jury. We are satisfied that a due respect for the statutory guaranty of the right of jury trial, with its resulting benefits, requires the submission of this case to the jury.

The simple tool doctrine, used by the courts below to bolster their belief that the evidence was insufficient, does not affect our conclusion. In the first place, the contrariety of opinion as to the reasons for and the scope of the simple tool doctrine, and the uncertainty of its application,[4] suggest that it should not apply to cases arising under

---

[4] See 3 Labatt, Master and Servant (2d ed.), pp. 2476–2484.

legislation, such as the Jones Act, designed to enlarge in some measure the rights and remedies of injured employees.[5] But even assuming its applicability, the doctrine does not justify withdrawing this case from the jury. For the only possible basis for the doctrine which is compatible with the provisions and policy of the Jones Act is that the master is not negligent in the case of defective simple tools because the possibility of injury from such tools is so slight as to impose no duty on him to see that they are free from defects in the first instance or to inspect them thereafter,[6] *Newbern* v. *Great Atlantic & Pacific Tea Co.,* 68 F. 2d 523; cf. *Hedicke* v. *Highland Springs Co.,* 185 Minn. 79, 239 N. W. 896—or to put it another way, the master is relieved of the duty to inspect simple tools for defects because the servant's opportunity for ascertaining such defects is equal to or greater than the master's. *O'Hara* v. *Brown Hoisting Mach. Co.,* 171 F. 394; *Miller* v. *Erie R. Co.,* 21 App. Div. (N. Y.) 45, 47 N. Y. S. 285; 2 Agency A. L. I. § 503 (d). Petitioner inspected the wrench, found it defective and then asked three times for a new one. This satisfied the burden of inspection placed on his shoulders by the doctrine, and it was then for the jury to say whether respondent's failure to comply with those repeated requests was negligence on

---

[5] Compare *McCarthy* v. *Palmer,* 113 F. 2d 721, with *Spain* v. *Powell,* 90 F. 2d 580.

[6] If the doctrine is but a phase of assumption of risk or contributory negligence, as has been suggested (see Labatt, *op. cit.,* pp. 2479, 2480, 2484), it is manifestly not applicable to actions under the Jones Act, for those common-law affirmative defenses are not available in such actions. *Socony-Vacuum Co.* v. *Smith,* 305 U. S. 424.

And, if the scope of the doctrine is that a master is under no duty to furnish reasonably safe and suitable simple tools (see *Allen Gravel Co.* v. *Yarbrough,* 133 Miss. 652, 98 So. 117; *Middleton* v. *National Box Co.,* 38 F. 2d 89), the doctrine is hardly compatible with the scheme of the Jones Act fixing liability on a master for injuries caused by defects and insufficiencies in his appliances due to his negligence.

its part. To deny petitioner the right to have the jury pass on that issue because of the simple tool doctrine is to say that doctrine relieves the master of any duty to furnish reasonably safe and suitable simple tools in spite of the fact that he knows they are defective, and requires the servant not only to inspect simple tools for defects, but also to supply his own simple tools when he finds those of the master defective. This is so obvious a perversion of the Jones Act as to require no comment.[7]

Since there must be a new trial, we deem it appropriate to state that, in our opinion, no reversible error was committed when the trial court refused to allow opinion testimony as to the best type of tool for the work.[8] Respondent's duty was not to supply the best tools, but only tools which were reasonably safe and suitable. Cf. *The Tawmie,* 80 F. 2d 792; *The Cricket,* 71 F. 2d 61.

The judgment is reversed and the cause remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*

Mr. Justice Frankfurter and Mr. Justice Jackson concur in the result.

The Chief Justice, Mr. Justice Roberts, and Mr. Justice Reed are of opinion that the judgment below should be affirmed.

---

[7] See note 6, *ante.*

[8] See note 3, *ante.*