**Herman CARTER, Plaintiff, Appellant,**

v.

**SCHOONER PILGRIM Inc., Defendant, Appellee.**

**No. 5119.**

United States Court of Appeals First Circuit.

Nov. 30, 1956.

---

I. Irving Kline, Gloucester, Mass., for appellant.

Paul J. Kirby, Boston, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal by the plaintiff from a judgment entered by the United States District Court for the District of Massachusetts on April 9, 1956, based on defendant's motion for a directed verdict, made at the close of all the evidence, on counts one and two of the plaintiff's complaint.

The first count of the complaint, brought under the Jones Act, 41 Stat. 1007 (1920), 46 U.S.C.A. § 688, alleges that plaintiff received personal injuries due to the negligence of defendant. The second count, brought under the general maritime law, mainly alleges that plaintiff received personal injuries due to defendant's failure to provide and maintain a seaworthy vessel with reasonably safe and proper appliances. The third count, for maintenance and cure, was allowed by the district court and plays no part in this appeal.

Defendant's answer denies that plaintiff's injuries were due to the negligence of defendant or the unseaworthiness of the vessel and alleges that they were due to plaintiff's own fault and that plaintiff had assumed the risk in regard to the cause of his injuries.

The plaintiff-appellant, Herman Carter, a fisherman, was hired as a crew member of the fishing vessel Pilgrim in January, 1955. The Pilgrim, a dragger type vessel operating out of Gloucester, Mass., was owned and operated by the defendant-appellee, Schooner Pilgrim, Inc. The Pilgrim, in fishing the waters off the coast of Nova Scotia, was at sea for approximately two weeks on each trip.

Upon being hired, plaintiff occupied the only available bunk in the forecastle, which contained eight bunks. Plaintiff's bunk was the bottom one on the port side aft. This bunk had a side board which ran along the edge. Measured from the base board, upon which the mattress rests, this side board was seven inches high. The bunk was twenty inches wide.

Since a mattress was not supplied by defendant, plaintiff purchased a standard five inch mattress at a fisherman's supply store. There was conflicting testimony at the trial as to whether it was customary for a vessel to furnish mattresses to the crew. Although there was testimony to the effect that three and four inch mattresses were used by some fishermen, the plaintiff and his expert witness testified that the mattress purchased by him represented the usual type of fisherman's mattress. With the mattress in place, the side board extended two inches over the mattress. The plaintiff testified on direct examination that when he was lying in the bunk there "wasn't much room at the top."

During calm weather the side board afforded adequate protection to the plaintiff. But during "rough" weather, he had to hold on to a shelf which was located inside the bunk against the wall of the vessel. Moreover, plaintiff testified that when the weather "got quite rough" he had to get out of the bunk and sit down on the locker which ran alongside and beneath the bunk. He stated that this happened "quite a few times" during the three months he was a seaman on the Pilgrim. He also testified that "two or three" times during his period of employment he had to get out of his bunk and sleep on the floor of the forecastle.

On April 15, 1955, the Pilgrim was about 150 miles from Gloucester. The plaintiff was lying in his bunk and had "started to doze off" when a "sea or something struck" the vessel and threw him out of the bunk. He struck his back on the edge of a table in the forecastle and landed on the other side of the locker. He testified that the blow almost knocked him out. With the aid of two shipmates, he was placed back into his bunk. Upon examination of the plaintiff's injuries, the captain turned the vessel around and steamed back to Gloucester, arriving there seventeen hours later.

After arriving at home the plaintiff received medical attention which continued until September, 1955. He remained away from work until July 11, 1955 when he took a job on another vessel. Unable to perform heavy work due to his back injury, he left that job on August 1, 1955, remaining idle until September, 1955 when he joined the crew of a smaller vessel. He has continued to work ever since the latter date.

Dwight S. Simpson, a naval architect and marine engineer who had designed and supervised construction of fishing vessels for many years, testified for the plaintiff that the accepted custom and practice as to side bunk boards on draggers such as the Pilgrim was to have a standard height of a minimum of ten inches and a practical maximum of about twelve inches. Further, he testified that the standard width of such bunks was twenty-four inches to a maximum of twenty-seven inches. It was his opinion that if the side board projected five inches above the top of the mattress it would give a seaman enough surface to brace himself and hold himself in the bunk. He stated on cross-examination that the body weight of its occupant would depress a five inch mattress approximately one inch, and that the base boards would give "a very small extent." Simpson also testified that it was a "frequent practice" for fishing vessels to have additional bunk boards that fit on top of the stationary board when the stationary board was not high enough to provide adequate safety.

Raymond Kershaw, manager of a fleet of fishing vessels and a marine surveyor, testifying as defendant's expert witness, stated that the plaintiff's bunk was a seaworthy one. He also testified that there was no custom or practice in Gloucester as to the height of side bunk boards. More specifically, he stated that the body

weight of its occupant "would bend" the base boards of the bunk in question 2⅜ inches. Defendant's other witness, Joseph Palazola, captain of the Pilgrim, also testified that the bunk in question was "safe and seaworthy." He stated that he thought the base bunk boards would give three or four inches due to body weight.

At the close of all the evidence the district judge granted the defendant's motion for a directed verdict on counts one and two. He allowed the plaintiff $780 for maintenance and cure.

■ In Nunes v. Farrell Lines, 1 Cir., 1955, 227 F.2d 619, 621, we said, "In attempting to decide whether there was introduced sufficient evidence of causal negligence under count one, and unseaworthiness under count two, this court must be ' * * * concerned solely with whether the testimony on behalf of the plaintiff, and reasonable inference to be drawn from it in the light most favorable to the plaintiff, made out a prima facie case allowing the plaintiff to have a jury pass upon his cause of action.' " Further, in view of the directed verdict, where the testimony is conflicting we must resolve all material questions of fact as though a jury had found them in plaintiff's favor. Bruszewski v. Isthmian S. S. Co., 3 Cir., 1947, 163 F.2d 720, certiorari denied 1948, 333 U.S. 828, 68 S.Ct. 451, 92 L.Ed. 1113.

The plaintiff testified that after he had purchased the usual type of fisherman's mattress and had placed it in the bunk there "was not much room at the top." Moreover, he described how in rough weather he had to hold on to a shelf inside the bunk against the wall of the vessel. On occasion he had to get out of the bunk and sit down on the floor locker, sometimes forced to sleep on the floor of the forecastle due to the inadequacy of his bunk. On the night of his injuries, while dozing, he was thrown out of his bunk by force of what he thought was a "sea" striking the vessel. Coupled with the above evidence was the testimony of plaintiff's expert witness that the seven inch height of the side bunk board in question fell short of the accepted custom and practice of ten to twelve inch side bunk boards on fishing vessels. He also stated it was a frequent practice for fishing vessels to have additional portable side boards for the protection of seamen when the stationary side board was not high enough to provide adequate safety.

■ We believe that the plaintiff has shown enough to permit of an inference by the jury that defendant's negligence in failing to provide reasonably adequate sleeping facilities caused plaintiff to fall out of his bunk. Certainly no other explanation for plaintiff's fall has been offered. Although defendant suggests on appeal that plaintiff might have been thrown out by an unusual storm against which no bunk board could give adequate protection, it did not present any evidence of this at the trial.

With respect to count two, it seems to us that the same testimony is sufficient to take this case to the jury on the question of unseaworthiness due to the inadequacy of the bunk. Nunes v. Farrell Lines, supra, 227 F.2d at page 622.

■ Although this case may be close on the issues of negligence and unseaworthiness, that does not justify either the district court or this court usurping the function of the jury. The fundamental and sacred right of a citizen to jury trial "should be jealously guarded by the courts." Jacob v. City of New York, 1942, 315 U.S. 752, 753, 62 S.Ct. 854, 86 L.Ed. 1166.

■■ It should be noted, in view of defendant's answer in this case, that contributory negligence and assumption of risk are not available defenses under the Jones Act. Jacob v. City of New York, supra, 315 U.S. at page 755, 62 S.Ct. at page 855. The doctrine of comparative negligence is in effect under both the Jones Act, under which count one of the complaint was brought, and in admiralty, under which count two was brought. See Socony-Vacuum Oil Co. v. Smith, 1939, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265. Therefore, the plain-

tiff would suffer only a mitigation of damages if it is found by the jury that his own fault contributed in any way to his own injuries.

A judgment will be entered vacating that part of the judgment of the District Court which dismissed counts I and II of the complaint, and remanding the case to that court for further proceedings not inconsistent with this opinion.