# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Miscellaneous Docket No. 765

IN RE TECHNOLOGY LICENSING CORPORATION,

Petitioner.

James T. Carmichael, Miles & Stockbridge P.C., of McLean, Virginia, argued for petitioner. With him on the petition for writ of mandamus was James A. Gromada, Katten Muchin Zavis Rosenman, of Washington, DC.

J. Donald McCarthy, Jones Day, of Los Angeles, California, argued for respondent.

On Petition for Writ of Mandamus from the U.S. District Court for the Northern District of California in 01-CV-4204.

Judge Richard Seeborg

# United States Court of Appeals for the Federal Circuit

Miscellaneous Docket No. 765

IN RE TECHNOLOGY LICENSING CORPORATION,

Petitioner.

_____

DECIDED:  September 12, 2005

_____

Before NEWMAN, RADER, and BRYSON, <u>Circuit Judges</u>.

Opinion for the court filed PER CURIAM.  Dissenting opinion filed by NEWMAN, <u>Circuit Judge</u>.

PER CURIAM.

I

This case began when Technology Licensing Corporation ("TLC") filed a complaint against Videotek, Inc., in the United States District Court for the Northern District of California, alleging that Videotek had infringed four patents owned by TLC. Videotek then served a complaint upon its supplier, Gennum Corporation, seeking to establish a right to indemnification in the event Videotek was held liable to TLC.  In response, Gennum filed a declaratory judgment action against TLC, seeking a declaration that TLC's asserted patents were invalid, unenforceable, and not infringed. Gennum requested a jury trial on its complaint.  TLC counterclaimed, alleging that Gennum was liable for direct and contributory infringement of the four asserted patents.

TLC and Videotek then entered into a settlement agreement that resulted in a consent decree disposing of the action between those two parties. That settlement, however, did not affect Gennum's declaratory judgment action against TLC.

Prior to the trial of the case involving Gennum and TLC, Gennum filed a motion in limine challenging TLC's formula for measuring damages. After a hearing, the district court entered an order that had the effect of significantly reducing the amount of damages TLC would be able to recover from Gennum if infringement were found. Following that order, TLC withdrew its claim for damages for past infringement and notified the district court that it would seek only injunctive relief against future infringement. Gennum then withdrew its request for a jury trial. TLC, however, maintained that it was still entitled to a trial by jury. Noting that Gennum was seeking to invalidate the patents, TLC argued that a declaratory judgment action to invalidate a patent is an action to which the right of trial by jury attaches, regardless of the type of relief sought by the patentee. The magistrate judge, however, ruled otherwise.

The magistrate judge began by recognizing that in Tegal Corp. v. Tokyo Electron America, Inc., 257 F.3d 1331 (Fed. Cir. 2001), this court held that there is no right to a jury trial when the only remedy sought by the plaintiff-patentee is an injunction and the defendant has asserted patent invalidity as an affirmative defense. The court noted that Tegal was not directly on point because in that case the issue of invalidity was asserted only as an affirmative defense and not as an independent claim. In this case, by contrast, the issue of invalidity was asserted as an independent claim (by the declaratory judgment plaintiff, Gennum). The question posed to the court was whether that distinction made a difference for purposes of the right to a jury trial.

In analyzing that issue, the magistrate judge followed this court's decision in In re Lockwood, 50 F.3d 966 (Fed. Cir.), vacated, 515 U.S. 1182 (1995), which in turn relied on Tull v. United States, 481 U.S. 412 (1987). The court cited those decisions for the proposition that the Seventh Amendment requires a jury trial in any action that is analogous to a suit at common law as of the time the Seventh Amendment was adopted. To resolve that question, the court noted, called for the application of a two-part test. First, a court must compare the action with the analogous action brought in the courts of England during the eighteenth century, prior to the merger of law and equity. Second, a court must look to the remedy sought and determine whether it is legal or equitable in nature. The magistrate judge stated that "application of the second prong of the Tull analysis, which pertains to the nature of the remedy sought, the most important factor for the court to consider according to Tegal, is relatively straightforward. Once TLC withdrew its claim for damages, all of the claims asserted by either party that remain to be tried are indisputably equitable in nature." Application of the first prong of the Tull analysis, the court acknowledged, was "more challenging." Invoking this court's decision in Lockwood, the magistrate judge explained that, at common law, allegations of patent infringement could be raised either in an action at law or in a suit in equity. The choice of forum and remedy, and thus of the method of trial, was left to the patentee. If the patentee sought only damages, he filed an action in a court of law. If he sought only to enjoin future acts of infringement, he could only bring a suit in equity.

The magistrate judge concluded that an action for a declaratory judgment of invalidity in which a counterclaim of infringement has been filed is most closely analogous to an action at common law for infringement in which a defense of invalidity

was asserted.  Accordingly, in determining whether the action was triable to a jury, the court looked to whether the patentee had sought damages or only an injunction, which would have been the dispositive question at common law for purposes of determining whether the action could be brought at law or in equity.  Because TLC was seeking only equitable relief, the court concluded that the action would have been brought in equity, and that no jury trial would have been available.  For that reason, the court ruled, TLC was not entitled to a jury trial in this case.

TLC petitioned this court for a writ of mandamus to compel the district court to grant its request for a jury trial.  Because "the right to grant mandamus to require jury trial where it has been improperly denied is settled," Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 511 (1959), we have entertained TLC's mandamus petition in order to decide whether the district court erroneously denied TLC's request for a jury trial.  See also Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472 (1962) (noting "the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury").  Although we, like the magistrate judge, consider the issue to be close, we concur in the analysis and conclusion reached by the magistrate judge that TLC was not entitled to a jury trial under our decisions and those of the Supreme Court.  We therefore deny the petition for mandamus.

II

This court's decision in Tegal is analogous to this case in some respects, but not all.  In Tegal, the plaintiff filed an action for patent infringement but sought only an injunction by way of relief.  The defendant raised the affirmative defense of invalidity.  The district court denied the plaintiff's request for a jury trial, and this court upheld that

decision. We held that a jury trial was not available because the plaintiff had sought only an equitable remedy and because in an analogous action in eighteenth century England, the patentee's decision to seek only an injunction would require that the suit be brought in equity, not at law. Tegal, 257 F.3d at 1340 ("[G]iven Tegal's interest only in an injunction, it is clear that Tegal would have needed, in eighteenth century England, to bring its case in a court of equity."). As a result, we held that the trial court had properly denied the request for a jury trial as to both infringement and validity. Id. at 1340-41.

This case differs from Tegal in two respects. First, the accused infringer has raised invalidity as a separate claim, not as an affirmative defense. Second, the accused infringer is aligned as the third-party plaintiff, while the patentee is aligned as a third-party defendant and counterclaimant. The second distinction is unimportant. We have made clear that for purposes of the right to a jury trial in patent cases, it is inconsequential whether the parties are aligned in the conventional manner (patentee as plaintiff and accused infringer as defendant and invalidity counterclaimant) or in the manner that results when the accused infringer initiates the action as a declaratory judgment (accused infringer as plaintiff and patentee as defendant and infringement counterclaimant). See Lockwood, 50 F.3d at 974-75.[1] The first distinction, however, is important, and it is upon that distinction that the parties focus their arguments.

---

[1] Although the Supreme Court vacated the order of this court in Lockwood when, after the Court granted certiorari, Lockwood withdrew his request for a jury trial, we have continued to rely on the "relevant and detailed analysis" in Lockwood, which contains this court's most extensive discussion of the historical and legal framework for analyzing the jury trial right in connection with actions involving claims of patent infringement and invalidity. Tegal, 257 F.3d at 1340. Accordingly, as we stated in

Relying on <u>Lockwood</u>, TLC argues that a patentee has a right to a jury trial in any declaratory judgment action to determine patent validity. TLC contends that either party has a right to a jury trial in such a declaratory judgment action, regardless of whether damages are sought in a separate cause of action, such as a related action for infringement.

In fact, <u>Lockwood</u> is not as broad as TLC's characterization suggests. After analyzing the nature of a declaratory judgment action for patent invalidity and the pertinent historical background, the court in <u>Lockwood</u> noted that an action for invalidity could not be brought at common law, and it held that a patent infringement action with a counterclaim of invalidity "resembles nothing so much as a suit for patent infringement in which the affirmative defense of invalidity has been pled." 50 F.3d at 974. The court noted that in such common law actions, the patentee could elect whether to proceed at law or in equity, based on the remedy sought, and the right to a jury would depend on the patentee's choice:

> If the patentee sought only damages, the patentee brought an action at law; in such a case, the defense of invalidity was tried to the jury, assuming that a jury had been demanded. . . . However, if the patentee facing past acts of infringement nevertheless sought <u>only</u> to enjoin future acts of infringement, the patentee could only bring a suit in equity, and the defense of invalidity ordinarily would be tried to the bench.

<u>Lockwood</u>, 50 F.3d at 976 (emphasis in original). Thus, the court concluded, under both English and American practice "it was the patentee who decided in the first instance whether a jury trial on the factual questions relating to validity would be compelled." <u>Id.</u>

---

<u>Tegal</u>, the court's analysis in <u>Lockwood</u> "has been neither supplanted nor questioned," and "we find its reasoning pertinent." <u>Id.</u>

In Lockwood, the patentee had not elected to limit himself to an equitable remedy. Although the issue of infringement had been removed from the case by summary judgment, the Lockwood court nonetheless considered whether the patentee had forfeited his right to a jury trial by taking any steps that would have required him, historically, to file his case in equity. The Lockwood court looked at the declaratory judgment counterclaim as an inverted action for infringement in which the patentee had not surrendered his right to a jury. Therefore, the patentee retained his right to a jury trial on the counterclaim. In this case, by contrast, the patentee has voluntarily abandoned its claim for damages and is proceeding only on a request for equitable relief. Thus, the declaratory judgment action in this case is an inverted form of an infringement action in which the patentee has sought only an injunction. In the historically analogous setting of a patent infringement suit with an invalidity defense, the case would therefore have been tried in an equity court, where neither party would be entitled to a jury. For that reason, as the magistrate judge correctly held, Lockwood's historical analysis dictates that TLC's decision to seek only an injunction meant that it lost its right to a jury on the related invalidity claims.

TLC also contends that Lockwood stands for the proposition that the writ of scire facias is an historical antecedent of the declaratory judgment claim of patent invalidity and that because the writ of scire facias was triable to a jury, the modern claim of patent invalidity should also be triable to a jury. Lockwood, however, did not accept the argument that the writ of scire facias was a "close eighteenth-century analog to a modern action for a declaration of patent invalidity," as TLC contends. In fact, Lockwood stands for the opposite proposition. The court in Lockwood specifically

stated that a proceeding on a writ of scire facias was not analogous to a suit for a declaration of invalidity, but was more akin to an action for inequitable conduct. See Lockwood, 50 F.3d at 974 n.9 ("The contemporary analog of the writ is thus an action for a declaration of unenforceability due to inequitable conduct, not due to invalidity."). Although the court in Lockwood went on to explain that the result in that case would not have been different if the historical analogy to the writ of scire facias were valid, the court plainly stated at the outset of that discussion that it did not regard that analogy as valid. Thus, Lockwood's treatment of the writ of scire facias does not support TLC's claim of a right to a jury trial.[2]

In sum, Lockwood does not stand for the proposition that a counterclaim for invalidity always gives rise to a right to a jury trial (for either party) on the ground that it

---

[2]     The dissent bases its analysis largely on the historical jury trial right that accompanied a writ of scire facias, notwithstanding Lockwood's clear ruling that the writ of scire facias (an action by the sovereign to cancel a patent obtained by fraud) is not analogous to the modern-day action to invalidate a patent. Thus, cases such as United States v. Am. Bell Tel. Co., 128 U.S. 315 (1888), which was an action by the United States to cancel a patent that was allegedly obtained by fraud, do not govern this case. Moreover, all of the nineteenth century cases cited by the dissent were infringement actions for damages in which the defense of patent invalidity was raised. Because they were actions at least in part for damages, the parties were entitled to a jury trial on the issue of patent invalidity, just as they would be today. Those cases do not address, and certainly do not decide, the very different issue presented in this case, in which only equitable relief is sought. Finally, the Supreme Court's decision in Root v. Railway Co., 105 U.S. 189 (1881), supports the magistrate judge's decision in this case, not the dissent. In that case, the plaintiff sought only an accounting of the defendant's profits in a patent infringement case. The Supreme Court held that because damages in the amount of the defendant's profits could be awarded by a court of law, there was an adequate remedy at law and thus an equity court had no jurisdiction in the case. In the course of its opinion, however, the Court noted that the issues of infringement and patent validity could be tried before an equity court if the suit was "a suit for relief against an infringement," e.g., for injunctive relief, as opposed to "an action for an infringement," i.e., for damages. Id. at 206. This case is one "for relief against an

is an inverted infringement action and that a patentee at common law had the right to a jury by filing an infringement action and seeking damages. Instead, the more accurate reading of Lockwood is that (1) it preserves to the patentee the right to elect a jury by seeking damages in an infringement action or counterclaim, and (2) the accused infringer or declaratory judgment counterclaimant is entitled to a jury trial only if the infringement claim, as asserted by the patentee, would give rise to a jury trial. Thus, if the patentee seeks only equitable relief, the accused infringer has no right to a jury trial, regardless of whether the accused infringer asserts invalidity as a defense (as in the Tegal case) or as a separate claim (as in this case).

Applying the analysis of Lockwood and Tegal to the facts of this case leads to the conclusion that if TLC had filed a standard infringement action as plaintiff and had requested only an injunction, neither TLC nor Gennum would have been entitled to a jury trial, regardless of whether Gennum raised invalidity as a defense or in a counterclaim. By choosing the equity route for its infringement action, TLC would have ensured that neither claim would be triable to a jury. For that reason, the inverted lawsuit, with Gennum as plaintiff and TLC as defendant, seeking only equitable relief on its claim of infringement, confers no jury trial right on TLC.

Because a party such as TLC will ordinarily be able to dictate whether it will have a jury trial by choosing whether to limit itself to equitable relief, the problem faced by TLC is not likely to recur with frequency in conventional infringement actions. That may be the reason that there are relatively few precedents directly applicable here.

---

infringement" and therefore the suit, including the issue of patent invalidity would have been triable in equity, without the right to a jury, at the time of Root.

Nonetheless, there is at least one prior appellate decision dealing with a similar fact setting, and in that case the appellate court reached the same conclusion that we reach here—that the patentee's decision to seek only equitable relief resulted in the entire case, including the invalidity claims, being triable to the court, without a jury. See Shubin v. United States Dist. Court, 313 F.2d 250 (9th Cir. 1963). Indeed, this court in Lockwood distinguished the Shubin case on the ground that there the patentee had limited its infringement counterclaim to a request for an injunction against future infringement, having stipulated to the absence of any claim for infringement damages. Lockwood, 50 F.3d at 977. That ground of distinction provides further support for the conclusion that Lockwood stands for the proposition that if the patentee has abandoned any claim for damages, the related invalidity claims are triable to the bench, not to a jury. Several other district courts have reached the same conclusion as the court of appeals in Shubin and the court in this case, based on similar reasoning. See Kao Corp. v. Unilever United States, Inc., 2003 WL 1905635 (D. Del. 2003); Glaxo Group Ltd. v. Apotex, Inc., 2001 WL 1246628 (N.D. Ill. 2001); Pfizer Inc. v. Novopharm Ltd., 2001 WL 477163 (N.D. Ill. 2001).

Because we conclude that the magistrate judge correctly analyzed the pertinent opinions of the Supreme Court and this court on the scope of the jury trial in the procedural setting of this case, we deny the petition for a writ of mandamus.[3]

---

[3] In its reply to the response to the petition for mandamus, TLC raises for the first time the argument that its request for damages on various state law claims that have been stayed pending disposition of the patent claims gives rise to a right to a jury with respect to the patent action. Because that argument was not raised in the petition, but only in the reply, we decline to address it. See Hannon v. Dep't of Justice, 234 F.3d

DENIED.

---

674, 680 (Fed. Cir. 2000); <u>Commercial Contractors, Inc. v. United States</u>, 154 F.3d 1357, 1367 (Fed. Cir. 1998).

# United States Court of Appeals for the Federal Circuit

Miscellaneous Docket No. 765

IN RE TECHNOLOGY LICENSING CORPORATION,

Petitioner.

NEWMAN, Circuit Judge, dissenting.

Gennum Corporation brought this action for declaration of noninfringement and invalidity of several patents owned by Technology Licensing Corporation (TLC), and TLC seeks its Seventh Amendment right to a jury trial. Precedent and the Constitution assure that right.[1] My colleagues on this panel have denied it. I must, respectfully, dissent.

Gennum seeks adjudication of both infringement and validity, both causes of action that carry the jury right. That right is not eliminated by TLC's waiver of recovery of damages for infringement, for legal as well as equitable issues remain to be litigated. Precedent makes clear that the waiver of damages does not remove all legal issues from the right to a jury; my colleagues err in holding that both validity and infringement lose the guarantee of the Seventh Amendment. Jury trial of Gennum's claim of invalidity is available as of right, whatever the requested remedy for infringement.

---

[1] Amendment VII. In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . .

In Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 447 (1830), the Court explained that the language of the Seventh Amendment, "Suits at common law," refers to "suits in which legal rights were to be ascertained and determined, in contradistinction to those, where equitable rights alone were recognized, and equitable remedies were administered."  When an action calls for the adjudication of legal rights, the trial court must honor the jury demand, whether or not equitable issues are also present.  Dairy Queen Inc. v. Wood, 369 U.S. 469, 472-73, 479 (1962).  In Ross v. Bernhard, 396 U.S. 531, 538 (1970), the Court again explained that the "Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action," and that the presence of a legal issue preserves the jury right, even if the overall character of the cause can be viewed as equitable. Litigation of patent validity is an action at law, separate from the infringement cause of action.  The independent viability of patent validity claims was reinforced in Cardinal Chem. Co. v. Morton International, Inc., 508 U.S. 83, 96 (1993), where the Court explained that "A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement."  As the Court held in Dairy Queen, as in Beacon Theatres Inc. v. Westover, 359 U.S. 500 (1959), and again in Tull v. United States, 481 U.S. 412 (1987), the jury right applies to all of the issues in the case.

Patent validity was a common law action tried to a jury in Eighteenth Century England.  An action to repeal and cancel a patent was pled as the common law writ of *scire facias.*  E.g., Rex v. Arkwright (Kings Bench 1785) (in an action in the Court of King's Bench: "Gentlemen of the jury, this is a scire facias brought to repeal a patent . . . ."); Rex v. Else (Kings Bench 1785) ("the patent is void, and the jury must find for the Crown"); Blackston v. Martin, Latch 112 (Kings Bench 1625-1628) ("En un scire facias, . . . mit hors

del Chancery, al County Palatine de Durham, d'estra trye, & en verdict done pur le plaintiff. . . ." [our translation: "In a *scire facias, . . .* removed from the Chancery to the County Palatine of Durham, having been tried, and upon verdict given for the plaintiff . . . ."]) Blackstone explained that a *scire facias* to cancel a patent was tried in an "ordinary legal court":

> The ordinary legal court is much more ancient than the court of equity. Its jurisdiction is to hold plean upon a scire facias to repeal and cancel the king's letters patent, when made against law, or upon untrue suggestions; and to hold plea of petitions, monstrans de droit, traverses of offices, and the like; when the king has been advised to do any act, or is put in possession of any lands or goods, in prejudice of a subject's right.

3 William Blackstone, <u>Commentaries on the Laws of England</u> 47 (1765-69). The *scire facias* for invalidating a patent invoked the common law powers that were held by the court of chancery, <u>see</u> Theodore F. Plucknett, <u>A Concise History of the Common Law</u>, 392 n.2 (5th ed. 1956) (the *scire facias* is legal, not equitable); 1 William Holdsworth, <u>A History of English Law</u>, 449 (6th ed. 1938) (chancery had always had some common law jurisdiction). Lord Coke explained that "The court of chancery is either ordinary, as a court of common law, or extraordinary, as a court of equity. The ordinary court holds pleas upon *scire facias* to repeal patents . . . ." 3 <u>A Systematic Arrangement of Lord Coke's First Institute of the Laws of England</u>, 328 n.D (J.H. Thomas ed., London, S. Brooke 1818). <u>See also</u> 2 William C. Robinson, <u>The Law of Patents</u> §726, n.1 (a *scire facias* could issue for unlawful grant of a patent).

In the United States, jury trials of issues of patent validity appear from the early days of the nation's jurisprudence. <u>See, e.g.</u>, <u>Ex parte Wood</u>, 22 U.S. (9 Wheat.) 603, 614-15 (1824) (Story, J.):

> [I]t is the opinion of the Court . . . that a peremptory mandamus issue to the Judge of the District Court . . . that he award a process, in the nature of a *scire facias*, to the patentees, to show cause why the patent should not be repealed . . . and that, if the issue so joined be an issue of fact, then the trial thereof to be by a jury; if an issue of law, then by the Court, as in other cases.

See also Shaw v. Cooper, 32 U.S. 292 (1833) (discussing jury charge in action for infringement in which the charge of infringement and the defense of invalidity were both tried to a jury); Gaylor v. Wilder, 51 U.S. 477, 498 (1850) (the issues of infringement and invalidity were tried to a jury, "And if the jury found the fact to be so, and that Fitzgerald again discovered it, we regard him as standing upon the same ground with the discoverer of a lost art . . . ."); Hotchkiss v. Greenwood, 52 U.S. 248, 267 (1850) (both infringement and invalidity were tried to a jury,  the court stating: "Now if the foregoing view of the improvement claimed in this patent be correct, it is quite apparent that there was no error in the submission of the questions presented at the trial to the jury");  Batten v. Taggert, 58 U.S. 74, 85 (1854) (the Court held that it was error for the trial judge to direct the verdict and remanded for the jury to determine issues of validity and infringement, stating that "[t]he jury are also to judge of the novelty of the invention"); Godfrey v. Eames, 68 U.S. 317, 326 (1863) (in suit to recover damages for infringement, it was error for trial judge to have directed the verdict instead of submitting question of validity to jury) ("The question of the continuity of the application should have been submitted to the jury."); Bischoff v. Wethered, 76 U.S. 812 (1869) (in breach of contract case asking for declaration that patent was invalid in light of prior patent on the same subject, the Court held that the issue of invalidity was the province of the jury and that directions to jury to find validity were proper); Klein v. Russell, 86 U.S. 433 (1873) (questions of infringement and validity in terms of utility were properly submitted to jury); Adams v. Bellaire Stamping Co., 141 U.S. 539, 541 (1891)

(in suit for damages for infringement, questions of infringement and validity in terms of obviousness were submitted to jury on "special questions," the jury finding "that the Irwin patent disclosed no improvement which required invention, as distinguished from mere mechanical skill or judgment . . .").

In these early cases the Court explored many aspects of patent litigation, illustrating the role of the jury on various issues. Most cases state that the patentee was seeking damages for infringement, and in Root v. Railway Co., 105 U.S. 189, 205 (1881) the Court explained that legal defenses could be raised in a suit for equitable relief for infringement, without filing a separate action in law. Not long after Root v. Railway the Court held in United States v. American Bell Telephone Co., 128 U.S. 315 (1888), that invalidity was a legal issue even in suits by the government. The Court stated that the United States can bring suit to cancel a fraudulently obtained patent in a court of equity, but must bring a suit for invalidity by reason of unpatentability in a court of law. Id. at 365 ("In such cases courts of law will pronounce them void.") By the time of Dairy Queen, there was no doubt that the presence of equitable issues could not defeat the jury right.

Jury trials involving patent validity are pervasive in our legal history, the reported cases raising no issue of entitlement to a jury depending on the remedy for infringement. The cases consistently show jury trials of both infringement and validity, most but not all cases mentioning damages as a remedy. E.g., Gray v. James, 10 F. Cas. 1015 (C.C.Pa. 1817) (suit alleging violation of patent right in which issues of infringement and invalidity were submitted to the jury) ("But if the jury should be of opinion that he is the original inventor, then there is nothing in this objection."); Watson v. Bladen, 29 F. Cas. 424, 425

Misc. No. 765                                5

(C.C.Pa. 1826) (issues of infringement and validity were submitted to the jury) ("If they [the jury] should be satisfied that the whole, or any of the essential parts and principles of the machine were invented by Martin, and introduced into the machine upon his suggestion, the whole patent is void"); Brooks v. Jenkins, 4 F. Cas. 275, 276 (C.C. Ohio 1844) (suit for infringement damages, charging jury: "This is an issue directed out of chancery. The pleadings are filed and so made up as to try every material fact involving the validity of Woodworth's patent. . . ."); Knight v. Gavit, 14 F. Cas. 765, 768 (C.C.Pa. 1846) (action for damages in which issues of infringement and invalidity were tried to the jury) ("The next question regards the utility of the plaintiff's alleged improvement. Upon this, also, you will pass as the evidence may direct you."); Parker v. Stiles, 18 F. Cas. 1163, 1172 (C.C. Ohio 1849) (jury decided issues of infringement and validity, charging jury: "I do not propose to examine the evidence on this point [invalidity], as it will be for the jury to decide on its force and conclusiveness."); Larabee v. Cortlan, 14 F. Cas. 1136, 1138 (C.C. Md. 1851) (suit for damages in which issues of infringement and validity were submitted to jury); (Am. Hide & Leather Splitting & Dressing Mach. Co. v. Am. Tool & Mach. Co., 1 F. Cas. 647, 649 (C.C. Mass. 1870) (suit for damages in which infringement was admitted but defense of invalidity was submitted to a jury) (charging jury: "a public use or sale of the invention, with the knowledge and consent of the inventor more than two years prior to his application, does invalidate a patent and make it void"); Blessing v. John Trageser Steam Copper Works, 34 F. 753, 754 (C.C.S.D.N.Y. 1888) (in an action at law for infringement, court ruled that invalidity was an issue for the jury "[w]here the question whether the improvement required inventive skill for its production actually exists, it is one of fact for the jury").

This strong history illustrates the issue of patent validity tried to a jury based on its status as a question of law, and not simply derivative of infringement. This was the situation in 1791 in England, and the United States Constitution preserved that right. Professor Pomeroy, summarizing the early United States jurisprudence in his treatise on equity, explained that when only an injunction is sought as remedy for infringement, unless validity is contested the issue is entirely equitable: "The ordinary form of relief [for infringement is] an injunction in equity; indeed, the action at law is seldom resorted to, except for the purpose of establishing the validity of the patent or copyright by the verdict of a jury when it is really contested." 4 Pomeroy's Equity Jurisprudence and Equitable Remedies §1352 (3d ed. 1905). Pomeroy recognized that validity, if contested, is for the jury even when the remedy for infringement is an injunction. The issue of invalidity requires determination of whether the patent was granted in accordance with law; this issue has consistently been triable to a jury, whether or not infringement was also at issue.

The Court has often stressed the importance of the constitutional safeguard of the jury system:

> Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.

Dimick v. Schiedt, 293 U.S. 474, 486 (1935). In Jacob v. City of New York, 315 U.S. 752 (1942) the Court reiterated:

> The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts.

Misc. No. 765                                         7

Id. at 752-53.

The Court has emphasized preservation of the jury right when a case contains both legal and equitable causes of action. In Dairy Queen, 369 U.S. at 473, the Court stated:

> It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control.

Similarly, in Beacon Theatres, 359 U.S. at 508, the Court granted mandamus to enforce the jury right where Fox West Coast Theatres brought an action against Beacon Theatres asking for a declaration that Fox was not in violation of the Sherman or Clayton Act and for an injunction, and where Beacon Theatres asserted counterclaims and cross-claims of antitrust violations. The Court stated: "Viewed in this manner, the use of discretion by the trial court under Rule 42(b) to deprive Beacon of a full jury trial on its counterclaim and cross-claim, as well as on Fox's plea for declaratory relief, cannot be justified."

Again in Tull, 481 U.S. at 421 n.6, the Court explained that the jury right includes statutory actions that are analogous to suits at common law or are legal in nature, and rejected the argument that "both the cause of action and the remedy must be legal in nature before the Seventh Amendment right to a jury trial attaches." When the cause of action arises under the common law, whether infringement or validity, the right to a jury trial attaches.

This fundamental right cannot have been withdrawn by this court in Tegal Corp. v. Tokyo Electron America, Inc., 257 F.3d 1331 (Fed. Cir. 2001). In Tegal the patentee sued for infringement but sought no damages. The defendant raised the defense of invalidity, and this court held that the defendant had no right to a jury trial. I do not here comment on the correctness of Tegal, for the case at bar is in an even stronger posture, for invalidity

was the subject of the complaint. My colleagues on this panel stray in stating that it is not relevant "whether Gennum raised invalidity as a defense or in a counterclaim," for Gennum did neither. Gennum sued for invalidity, and neither as a defense nor as a counterclaim, but as the charge in the complaint. Tegal cannot be enlarged to deny the jury right on a complaint of patent invalidity, without contravening the great weight of Seventh Amendment jurisprudence. Dairy Queen and Beacon Theatres made clear that when both legal and equitable issues are raised, the jury right is preserved.

The majority opinion supports its deprivation of the jury right with the vacated decision of In re Lockwood, 50 F.3d 966 (Fed. Cir.), *vacated sub-nom* American Airlines, Inc. v. Lockwood, 515 U.S. 1182 (1995). In Lockwood the Court had granted certiorari on the question: "In action in which sole claim to be tried is claim under Declaratory Judgment Act to have a patent declared invalid, is there right to jury trial under Seventh Amendment?" 63 USLW 3857 (June 6, 1995). The Court vacated the Federal Circuit decision when Mr. Lockwood withdrew his request for a jury trial. Lockwood's premise that the writ of *scire facias* was limited to revocation for fraud is contravened by English precedent, as I have cited.

The panel majority's conclusion -- that a suit to revoke or invalidate a patent on grounds other than fraud could not be brought in England and was not triable to a jury -- is directly contrary to English and succeeding American precedent applying Seventh Amendment principles. Indeed, the *scire facias* was cited by Justice Story in 1824 in granting mandamus to try the validity of the patent, with trial to a jury. Ex Parte Wood, 22 U.S. at 614-15. The historical foundation of the jury right is imbedded in law and tradition, and is not subject to ready repudiation on the questionable dictum of a vacated opinion.

The panel majority lists three district court cases that construed Tegal as barring jury trial in a declaratory judgment action. However, the jury right is not affected by whether issues arise by direct or declaratory action. See Moretrench Am. Corp. v. S.J. Groves & Sons Co., 839 F.2d 1284, 1286 (7th Cir. 1988) (a declaratory action is neither legal nor equitable, and does not change the nature of the issues). In Tegal invalidity was raised as a defense, not as a claim or counterclaim; it is unwarranted to enlarge Tegal to bar jury trial when invalidity is charged in the complaint, and validity is presented by counterclaim.

It is "the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury." Dairy Queen, 369 U.S. at 472. The court's deprivation of the jury right when invalidity is raised by declaratory action, whether or not damages are requested for infringement, is contrary to the Constitution and contrary to precedent.